IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CLARANCE JOHNSON | : | CIVIL ACTION |
| v. | : | |
| TREVOR WINGARD, et al.[1] | : | NO. 06-4396 |

# REPORT AND RECOMMENDATION

ELIZABETH T. HEY, U.S.M.J.                                                  October 2, 2013

      One might think that when the response to a habeas petition begins with "respondents will not contest petitioner's claim to federal habeas relief," the adjudication would be simple. However, as is evidenced by the time this case has been under consideration – the petition was filed in October 2006 – nothing in this case has been simple. Johnson's habeas claims include a challenge to his conviction for violation of Pennsylvania's Corrupt Organizations Act ("PaCOA" or "corrupt organizations"). The District Attorney concedes that Johnson's PaCOA conviction should be vacated. However, Johnson seeks vacatur of his other convictions, as well, arguing that "his ability to defend himself against the murder charge and remaining offenses was poisoned by" the evidence presented in support of the PaCOA violation. Johnson v. Wynder, No. 06-4771, Brief for Appellant at 31 (3d Cir. filed Aug. 4, 2009); see also Doc. 29 at 11. Further complicating adjudication of Johnson's petition is the fact that, after receiving

---

[1]Petitioner is currently incarcerated at the Laurel Highlands State Correctional Institution in Somerset, Pennsylvania. Trevor Wingard is the superintendent of the facility and has been substituted for Mr. Wynder as the respondent in this action. See Rule 2 of the Rules Governing Section 2254 Cases (requiring that state officer with current custody be named as respondent).

permission from the Third Circuit to file a successive habeas petition challenging his PaCOA conviction, Johnson filed an amended petition presenting a litany of over 50 claims unrelated to the PaCOA count. For the reasons that follow, I recommend that the petition be granted only to the extent that Johnson's conviction for violation of PaCOA be vacated.

I. **FACTS AND PROCEDURAL HISTORY**

This case has a long procedural history in both the state and federal courts. On May 25, 1990, after a joint trial with codefendants Joseph D'Amato and Stephen Williams, a jury convicted Johnson of first-degree murder, conspiracy and corrupt organizations. N.T. 5/25/90 at 9-10. The charges arose from the shooting death of John Philson on October 30, 1980, in Philadelphia. The Superior Court summarized the basic theory underlying the case as follows:

> [On] October 30, 1980, the victim was shot in retaliation for his robbery of a gambling operation run by [Johnson's] co-defendant, Joseph D'Amato. [Johnson] worked for D'Amato. Philson's murder remained unsolved for five years until D'Amato was recorded by an undercover officer admitting that he had hired [Johnson] to arrange Philson's murder.

Commonwealth v. Johnson, No. 1896 EDA 2005, Memorandum at 2 (Pa. Super. Jul. 20, 2006). On May 30, 1990, after a penalty-phase hearing, the jury deadlocked and the Honorable Albert F. Sabo of the Court of Common Pleas of Philadelphia County imposed a life sentence for the murder conviction. N.T. 5/30/90 at 15, 17-18. On March 22, 1991, after denying post-verdict motions, Judge Sabo sentenced Johnson to 5-to-10 years each

for the conspiracy and PaCOA convictions to be served consecutively to the life sentence and concurrently with one another. N.T. 3/22/91 at 31.

Johnson unsuccessfully appealed his conviction and subsequently filed an unsuccessful petition pursuant to Pennsylvania's Post Conviction Relief Act, ("PCRA"), 42 Pa. C.S.A.§§ 9541-9551.[2] While his PCRA petition was pending, the Supreme Court of Pennsylvania determined that PaCOA "does not encompass the prosecution of a wholly illegitimate enterprise." Commonwealth v. Besch, 674 A.2d 655, 661 (Pa. 1996).[3]

---

[2]The Superior Court affirmed the judgment of sentence on October 22, 1992, rejecting thirteen claims unrelated to PaCOA. Commonwealth v. Johnson, 615 A.2d 1322 (Pa. Super. 1992), app. denied, 625 A.2d 1191 (Pa. 1993) (table). Johnson filed a PCRA petition in July 26, 1993, which was amended by appointed counsel. The claims Johnson presented were not related to the PaCOA conviction. By opinion dated January 31, 1997, the Honorable Genece Brinkley denied the petition. Commonwealth v. Johnson, No. 337-351, Opinion and Order (Phila. C.C.P. Jan. 31, 1997). The Superior Court affirmed the denial of PCRA relief on March 13, 1998. Commonwealth v. Johnson, No. 791 Phila. 1997 (Pa. Super. Mar. 13, 1998).

[3]PaCOA made it unlawful for "any person employed by or associated with any enterprise to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 Pa.C.S. § 911(b)(3). In Besch, the Pennsylvania Supreme Court concluded that enterprise, as used in the statute, referred only to legitimate business enterprises. "Pa.C.O.A. is directed at preventing the infiltration of legitimate business by organized crime in order to promote and protect legitimate economic development within Pennsylvania." 674 A.2d at 659. Two months after Besch, PaCOA was amended to include wholly illegitimate enterprises. 18 Pa.C.S. § 911(h)(3), as amended, June 19, 1996. In Kendrick v. District Attorney, the Pennsylvania Supreme Court, answering a question certified to it by the Third Circuit, held that Besch did not establish a new rule of law which would preclude retroactive application to cases on collateral review. 916 A.2d 529, 531 (Pa. 2007). The court also declined to overrule Besch. Id. at 540. Shortly after the decision in Kendrick, the Third Circuit decided McKeever v. Warden SCI-Graterford, 486 F.3d 81 (3d Cir. 2007), applying Besch and Kendrick in affirming habeas relief to McKeever on his conviction for violating PaCOA in an illegal drug enterprise.

3

In 1999, Johnson filed his first habeas petition presenting claims unrelated to the validity of the PaCOA violation or the Besch decision. See E.D. Pa. Civ. No. 99-3093, Docs. 1 & 15. On February 16, 2000, the Honorable Robert Kelly denied the petition on the merits, relying on a Report and Recommendation by the Honorable Diane M. Welsh. See E.D. Pa. Civ. No. 99-3093, Docs. 15 & 17.

In August 2004, Johnson filed a second PCRA petition, arguing that his PaCOA conviction was unlawful under Besch. The PCRA court dismissed the petition as untimely in 2006, and the Superior Court affirmed the dismissal on appeal. Commonwealth v. Johnson, No. 1896 EDA 2005, Memorandum (Pa. Super. Jul. 20, 2006).

On October 3, 2006, the within action was initiated when the court docketed Johnson's pro se petition for habeas corpus in which he claimed, among other things, that his conviction for violation of PaCOA violated due process.[4] See Doc. 1. Judge Kelly dismissed the petition as successive and Johnson filed an appeal. On December 1, 2010, the Third Circuit concluded that Johnson met the requirements of section 2244(b)(2)(B)

---

[4] Although the petition was filed well outside the one-year limitations period, the timeliness of the petition is not at issue. The Supreme Court has held that a convincing actual innocence claim will overcome section 2244's limitations period. McQuiggin v. Perkins, ___ U.S. ___, 133 S.Ct. 1924 (2013). It is not disputed, based on the Pennsylvania Supreme Court's interpretation of the statute as it existed at the time of Johnson's trial in Besch and Kendrick, that Johnson is actually innocent of the PaCOA charge.

4

and found that he was "entitled to file a second habeas petition raising his PaCOA claim." Johnson v. Wynder, 408 Fed. Appx. 616, 619 (3d Cir. 2010).[5]

On March 7, 2012, Johnson, through counsel, filed an amended habeas petition arguing that there was insufficient evidence to support Johnson's murder conviction, that the trial court erred in refusing to sever Johnson's trial from that of his co-defendant, and incorporating an additional 54 allegations of error that had been presented in Johnson's post-verdict motions filed in state court in 1990. See Doc. 18 ¶ 12 & Exh. B. Noticeably absent from the amended petition was any claim challenging the PaCOA conviction, the claim upon which the Third Circuit based its decision allowing Johnson to file a successive habeas petition.

The District Attorney responded to the amended petition, arguing that the court had no jurisdiction to consider the claims presented because the Third Circuit had authorized only a PaCOA claim and each of the claims had either been presented in the first habeas petition or could have been presented in that petition. See Doc. 22. Judge Restrepo issued a Report on March 28, 2013, recommending that the amended petition be dismissed as a second or successive petition filed without the required authorization from the Third Circuit. See Doc. 24. In the objections to Judge Restrepo's Report, Johnson's counsel explained that, prompted by unfortunate personal issues, she misunderstood the Third Circuit's ruling and mistakenly believed that no further action was required on the

---

[5]The Third Circuit appointed counsel to represent Johnson on appeal. The Honorable L. Felipe Restrepo, to whom Judge Kelly referred the case for a Report and Recommendation, continued the appointment of counsel when the case was remitted to the District Court. See Doc. 15.

PaCOA issue. See Doc. 25 at 5-6. Without opposition from the District Attorney, see Doc. 27, Judge Kelly permitted counsel to supplement the amended petition "limited to the addition of the claim relating to petitioner's conviction under [PaCOA]." Doc. 28. On April 29, 2013, counsel filed a supplemental amended petition, arguing that Johnson was actually innocent of the PaCOA conviction and his conviction violated the Fifth, Eighth, and Fourteenth Amendments. Counsel also argued that Johnson's trial, appellate, and PCRA counsel were ineffective for failing to argue that PaCOA's statutory language and legislative history established that PaCOA did not apply to wholly illegitimate operations, the position that was ultimately adopted in Besch. See Doc. 29. Counsel further referred back to the original 2006 habeas petition, arguing that he was denied a fair trial on the murder charge as a result of the corrupt organizations evidence. See id. at 11. On July 1, 2013, the District Attorney filed a response conceding that, in light of Besch and Kendrick, "the trial court erred in imposing a judgment of sentence for violating [PaCOA]." Doc. 34 at 4. However, the District Attorney contends that the PaCOA charge "was simply not a factor in the verdict on the far more serious murder charge." Id. at 5.[6]

## II. DISCUSSION

### A. PaCOA Count

The District Attorney does not contest the vacatur of Johnson's PaCOA conviction. As the Third Circuit recounted in McKeever, "[i]n 1996, the Supreme Court

---

[6] Upon Judge Restrepo's investiture as a district court judge, Judge Kelly referred the case to me for a Report and Recommendation. See Doc. 33.

6

of Pennsylvania held that PaCOA did not apply to individuals who operated wholly illegitimate businesses." 486 F.3d at 84 (citing Besch, 674 A.2d 655). There is no argument that Johnson was involved in a wholly illegitimate lottery house/business. Thus, at the time of Johnson's conviction in 1990, his actions did not violate PaCOA as it was written, and he is entitled to vacatur of the PaCOA conviction.

### B. Claims Arising from Vacatur of the PaCOA Conviction

The difficulty with this case is the impact the vacatur of the PaCOA conviction may have on the murder conviction (and to a lesser extent the conspiracy conviction). In his amended petition filed on March 7, 2012, Johnson presented a claim that there was insufficient admissible evidence to support the murder conviction.[7] Although Johnson challenged the sufficiency of the evidence on direct appeal, the Superior Court reviewed that claim based on a trial record that included the PaCOA count. Considering the potential impact that vacatur of one count could have on the admissible trial evidence as to the remaining counts, it is appropriate to consider his sufficiency claim in this new light. I will therefore construe the Third Circuit's order allowing Johnson to file a successive petition raising his PaCOA claim broadly enough to encompass Johnson's

---

[7]Johnson also presented a claim that the trial court improperly refused to sever the trial, as well as 54 other claims of error which were presented in his post-verdict motions. As none of these claims are impacted by the PaCOA conviction, they are immaterial to the issue which the Third Circuit permitted Johnson to file via this second petition. These claims will be addressed in the next section of this Report.

7

challenge to the sufficiency and fairness of his murder and conspiracy convictions absent the PaCOA count.[8]

In assessing the sufficiency of the evidence, the federal court must determine, "whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Sullivan v. Cuyler, 723 F.2d 1077, 1083-84 (3d Cir. 1983) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). The adoption of the Antiterrorism Act and Effective Death Penalty Act ("AEDPA") has altered this inquiry by adding an additional level of deference. Under § 2254(d)(1), the court must determine whether the state court's application of the Jackson standard was itself an unreasonable application of that federal standard. See § 2254(d)(1).[9]

---

[8]As will be explained later in this Report, once the Circuit Court has authorized a successive petition, the District Court must examine each claim presented to determine individually if the claim is successive for purposes of section 2244(b). Here, the sufficiency claim as now presented -- absent the evidence admissible only to prove PaCOA -- could not have been presented until the PaCOA conviction was vacated.

[9]Considering that the state courts did not review the sufficiency claim as it is now cast -- absent any evidence admissible only on the PaCOA count -- it might be argued that de novo review should apply. However, because I conclude that the evidence admitted at trial would still have been admissible even without the PaCOA count, it is more consistent with AEDPA to apply deferential review to the Superior Court's sufficiency analysis.

On direct appeal, the Superior Court considered the sufficiency of the evidence.[10]

> The evidence, viewed in the light most favorable to the Commonwealth, establishes that Johnson worked for D'Amato, provided protection for D'Amato's lottery houses, arranged to have the victim killed because he was suspected of setting up a robbery at the Greenhouse,[11] and gave guns, drugs and money to Leroy Clacks and Steven Williams to commit the murder. These facts were established through D'Amato's taped conversations with Lt. Kalmar and through the trial testimony of Gene Swain, Terri Harris, Steven Moore and Jonathan White. . . . The evidence clearly was sufficient to find that [Johnson] had conspired with D'Amato to kill Philson and that he was also involved in D'Amato's illegal lottery business. Accordingly, Johnson's sufficiency claim has no merit and trial counsel will not be found ineffective for failing to raise a meritless claim.

Commonwealth v. Johnson, 615 A.2d at 1330 (record citations omitted).

The problem with Johnson's claims is that he fails to identify what evidence would have been inadmissible to prove the murder and conspiracy absent the PaCOA charge. Without identifying such evidence, it is impossible to address the sufficiency question or consider the potential prejudice that resulted from its admission. Having

---

[10]Johnson had presented a claim that his trial counsel was ineffective for failing to preserve a sufficiency claim. In reviewing that claim, the Superior Court reviewed the evidence and specifically found that there was sufficient evidence to support the verdicts in determining that counsel was not ineffective for failing to present a meritless claim. Commonwealth v. Johnson, 615 A.2d at 1330.

[11]The Greenhouse was an illegal lottery house located at 1649 Federal Street, operated by Joseph D'Amato and Gene Swain. N.T. 5/11/90 at 13, 16; 5/15/90 at 7.

9

reviewed the trial record, it does not appear that the Commonwealth would have been precluded from offering any of its evidence had there been no PaCOA count.[12]

The evidence implicating Johnson in the murder of Mr. Philson and also in the conspiracy included the testimony of Lieutenant Andrew Kalmar, who worked undercover posing as a corrupt police officer, taking money from the operators of illegal gambling houses in exchange for protection. N.T. 5/11/90 at 6-7, 56, 63-65. As part of the investigation, Lieutenant Kalmar taped conversations with Johnson's co-defendant, Joseph D'Amato, who ran illegal gambling houses, including the Greenhouse.[13] Kalmar explained that during his conversations with D'Amato, D'Amato mentioned using Johnson "to do a couple jobs for him," meaning kill people. Id. at 66. Kalmar also explained that he tried to draw information from D'Amato during the recorded conversations identifying Johnson and the homicides in which he was involved. Id. at 67-68; N.T. 5/14/90 at 6. During these recorded conversations, which were played for the jury, D'Amato discussed hiring Johnson to kill the doorman at one of the illegal

---

[12]Although the Third Circuit has expressed a preference for the state courts to make evidentiary determinations in the first instance in a similar case, see Wilson v. Vaughn, 553 F.3d 208, 213 (3d Cir. 2008) (relying on Pennsylvania Supreme Court's evidentiary determinations in co-defendant's case when determining the admissibility of evidence absent a PaCOA charge), the Superior Court has made clear that any claim Johnson might raise based on Besch would be considered untimely. See Commonwealth v. Johnson, No. 1896 EDA 2005, Memorandum at 4-5 (Pa. Super. Jul. 20, 2006) (finding PCRA petition based on Besch untimely). Thus, Johnson has no avenue through which to seek state-court review of this claim.

[13]Lieutenant Kalmar testified that the taped conversations included both phone conversations and live conversations when he wore a body wire. N.T. 5/11/90 at 11, 55.

lottery houses because the doorman had robbed the place.  See Transcript of tape recorded conversations at 6-8, 80-81, 83.[14]

Gene Swain, who was also involved in the operations of the Greenhouse and other betting venues, testified that there were some members of the betting establishment that believed Mr. Philson was involved in a robbery of the Greenhouse and that he was killed three or four months later.  N.T. 5/15/90 at 31-32.  The jury also heard the testimony of Terri Harris, Leroy Clacks' former girlfriend.[15]  Ms. Harris testified that she saw Clacks and Williams meet with Johnson and D'Amato about a month before Mr. Philson was killed.  When Clacks and Williams left that meeting they had been given a bag containing syrup,[16] guns and a lot of money.  N.T. 5/14/90 at 139-45.  Ms. Harris also stated that, on the night of Mr. Philson's murder, she rode with Mr. Philson to Earp Street at the behest of Clacks, believing that Clacks and Steven Williams were going to talk to Mr. Philson about him dating Ms. Harris.  Id. at 148-50.  When Williams and Clacks arrived on the scene, Williams pulled Ms. Harris out of the car at gunpoint and told her to leave.  As she was running away, she heard two gunshots.  Id. at 149-52, 154.  The next morning, Clacks and Williams arrived at Ms. Harris's apartment, more syrup in hand.  Clacks "had

---

[14]D'Amato also discussed other shootings in which Johnson was involved.  See Transcript of tape recorded conversations, at 73, 80-81.

[15]Throughout the testimony, Clacks was referred to as "June," "Junebug," or "Juney."  Williams was known as "Blue" or "Saleen."  Johnson was "Sweet Meat" or "Sweets."

[16]Syrup refers to cough syrup (ordinarily containing codeine).  N.T. 5/14/90 at 144.

11

blood and stuff all over him," and admitted that he and Williams had killed Mr. Philson because Philson had robbed one of Johnson's numbers houses. Id. at 154-57.[17] Ms. Harris said that both Clacks and Williams talked about "tak[ing] care of business for Sweets [Johnson]." Id. at 163.

Vacatur of the PaCOA charge would have no impact on the admissibility of this evidence as it clearly went to the murder and conspiracy charges.[18] Moreover, to the extent Johnson complains that the evidence relating to the illegal lottery houses (the PaCOA based charge) tainted or poisoned his ability to defend against the murder charge, see Doc. 29 at 11, I conclude that evidence of the illegal gambling operation was relevant to establish the motive for the killing and the relationship between the victim, conspirators and perpetrators. See Wilson, 533 F.3d at 215 (noting evidence related to PaCOA charge would still be admissible absent that charge to show motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or "to show part of a the chain or sequence of events which became part of the history of the case and formed part of the natural development of the facts") (citing Commonwealth v. Dillon, 925 A.2d 131, 137 (Pa. 2007)). Thus, there is no basis to conclude that the Superior Court acted unreasonably in finding the evidence sufficient to support Johnson's conviction for

---

[17]Clacks was killed in December 1980, in retaliation for John Philson's death. N.T. 5/15/90 at 71-72.

[18]To the extent Johnson might argue that some of the evidence constituted inadmissible hearsay as to him, I note that Pennsylvania courts recognize the co-conspirator exception to the hearsay rule. See Commonwealth v. Coccioletti, 425 A.2d 387, 391 (Pa. 1981) (citing Dutton v. Evans, 400 U.S. 74, 89 (1970)) (permitting out-of-court declarations of one co-conspirator to be admitted against another co-conspirator).

murder and conspiracy, nor to conclude that the PaCOA evidence unfairly tainted the jury's ability to consider the murder and conspiracy counts.

### C. Claims Unrelated to PaCOA

In addition to the PaCOA related claims, Johnson also included 56 allegations of error unrelated to the PaCOA conviction.[19] These claims were not authorized by the Third Circuit, which specifically stated that "Johnson has met the requirements of 28 U.S.C. § 2244(b)(2)(B), and thus is entitled to file a second habeas petition raising his PACOA claims." Johnson v. Wynder, No. 06-4771, Opinion at 6 (3d Cir. Dec. 1, 2010).

It is incumbent upon the District Court to examine the claims presented in a successive petition authorized by the Circuit Court to determine if each of the claims meets the requirements of section 2244(b). See 28 U.S.C. § 2244(b)(4) ("A district court shall dismiss any claim presented in a second or successive application that the court of appeals has authorized to be filed unless the applicant shows that the claim satisfies the requirements of this section."); Goldblum v. Klem, 510 F.3d 204, 216 (3d Cir. 2007) ("before a district court may consider the merits of [a successive petition permitted by the

---

[19] In his first claim in the Amended Petition, Johnson challenged the sufficiency of admissible evidence to support the murder conviction. See Doc. 18 ¶ 12 GROUND ONE. I construed this claim to challenge the sufficiency of the evidence absent the PaCOA charge. In his second and third claims, Johnson claimed that the trial court improperly failed to sever his trial from that of his co-defendant and refused to redact the statements of a non-testifying co-defendant. See Doc. 18 ¶ 12 GROUNDS TWO and THREE. In his fourth claim, Johnson referred to an attachment of 54 issues that were presented in his post-verdict motions. See Doc. 18 ¶ 12 GROUND FOUR & Attachment B. Included in the 54 issues were challenges to the court's denial of severance and failure to redact statements of the co-defendant. See Doc. 18, Attachment B ¶¶ 7, 11, 12.

13

circuit court], the petitioner must satisfy the substantive requirements for it"). Section 2244(b) states in relevant part:

> (1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.
> (2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless –
> (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
> (ii) the facts underlying the claim, if proven and viewed in the light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2244(b)(1) and (2).

Comparison of Johnson's current and first habeas petitions reveals that several of the claims are the same. See Doc. 18 Attachment B ¶¶ 9, 38 and E.D. Pa. Civ. No. 99-3093, Doc. 1, Memorandum of Law, at 16 (GROUND FIVE) (challenging identification testimony of witness Terri Harris); Doc. 18 Attachment B ¶ 21f and E.D. Pa. Civ. No. 99-3093, Doc. 1, Memorandum of Law, at 13-14, 15 (GROUND FOUR) (challenging prosecution's introduction of a card sent to Steven Moore's mother); Doc. 18 Attachment B ¶¶ 21h, 29 and E.D. Pa. Civ. No. 99-3093, Doc. 1, Memorandum of Law, at 14 (GROUND FOUR) (challenging prosecutor's reference to the deaths of witnesses/unrelated individuals); Doc. 18 Attachment B ¶¶ 21j, 37 and E.D. Pa. Civ. No.

99-3093, Doc. 1, Memorandum of Law, at 13-14 (GROUND FOUR) (challenging prosecutor's use of display board). The court is prohibited from addressing the merits of these claims pursuant to section 2244(b)(1) because the claims were presented in Johnson's prior habeas petition.

The remainder of Johnson's claims could have been presented in his prior petition. None of the remaining issues rely on a new rule of constitutional law or previously unknown facts. This is evidenced by the fact that two of the claims (Grounds Two and Three) raise errors at trial without any reference to new facts or law, and the remaining 54 claims were presented in his post-verdict motions in 1990, nine years prior to his first habeas filing. Thus, the court is barred from addressing the remaining issues by section 2244(b)(2).

D. **Certificate of Appealability**

Pursuant to Local Appellate Rule 22.2 of the Rules of the United States Court of Appeals for the Third Circuit, at the time a final order denying a habeas petition is issued, the district judge is required to make a determination as to whether a certificate of Appealability ("COA") should issue. In this case, I have recommended denying a substantial portion of Johnson's petition, either on the merits or on procedural grounds. For the court to issue a COA, Johnson must make "a substantial showing of the denial of a constitutional right." Miller-El v. Cochrell, 537 U.S. 322, 336 (2003). With respect to Johnson's claim that the admissible evidence absent the PaCOA charge was insufficient to support his convictions for murder and conspiracy, I recommended denying the claim on its merits. Where the court rejects a constitutional claim on the merits, the COA

15

should issue only if "[t]he petitioner [demonstrates] that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. at 338 (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)). Johnson has failed to make this showing.

The claims unrelated to the vacatur of the PaCOA conviction are barred by the rules governing successive petitions. Where the petition is untimely or otherwise procedurally defective, a COA is not warranted unless the petitioner demonstrates that reasonable jurists would: (1) "find it debatable whether the petition states a valid claim of the denial of a constitutional right," and (2) "whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484. Here, Johnson's additional claims are plainly barred by the language of section 2244(b)(1) and (2). Thus, I recommend that the District Court deny the COA.[20]

### III. CONCLUSION

Johnson obtained permission from the Third Circuit to file a petition challenging his PaCOA conviction. Because Johnson's actions did not violate PaCOA, as it was written at the time, he is entitled to habeas relief on his PaCOA conviction. However, to the extent he argues that vacatur of the PaCOA conviction entitles him to relief from his murder and conspiracy convictions, he is incorrect. As discussed, the evidence is sufficient to support those convictions and would not be rendered inadmissible or prejudicial absent the PaCOA charge. The remainder of Johnson's claims are barred as

---

[20] Although the District Attorney has conceded that Johnson's conviction for violation of PaCOA should be vacated, I note that no COA is required for Respondent to pursue an appeal. Fed. R. App. P. 22(b)(3).

successive by section 2244 because he either presented them in his prior petition or could have.

Therefore, I make the following:

## **R E C O M M E N D A T I O N**

AND NOW, this 2nd day of October , 2013, IT IS RESPECTFULLY RECOMMENDED that the petition for writ of habeas corpus be GRANTED to the extent Petitioner's conviction for violation of Pennsylvania's Corrupt Organizations Act be vacated and Petitioner be resentenced. The remainder of Petitioner's claims are DENIED and there has been no substantial showing of the denial of a constitutional right requiring the issuance of a certificate of appealability.

BY THE COURT:

/s/ELIZABETH T. HEY

_____
ELIZABETH T. HEY
UNITED STATES MAGISTRATE JUDGE